**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOSEPH D. BURGDORF,

                       Plaintiff,

        v.                                           6:22-CV-987
                                               (DNH/ATB)

BETSY ROSS NURSING AND REHABILITATION
CENTER INC., et al.,

                      Defendants.

JOSEPH D. BURGDORF, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a pro se complaint filed by plaintiff Joseph D. Burgdorf, in which he alleges claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., as well as additional criminal and civil causes of action alleged under state and federal law.  (Dkt. No. 1) ("Compl.").  Plaintiff has moved to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

## I.  **In Forma Pauperis ("IFP") Application**

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2).  After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss

the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

2

## II.   **Complaint**

Plaintiff alleges that in September 2019, he was discharged from an unidentified hospital "in sound physical and mental condition," after receiving treatment for acute pancreatitis.  (Compl. at CM/ECF p. 7).  At his doctor's suggestion, plaintiff agreed to undergo further, subsequent care at the defendant facility, Betsy Ross Nursing and Rehabilitation Center ("BRNRC"), for "three or four days at most."  (*Id.*).

According to the plaintiff's complaint, defendants Tracy Lynn Jayne, a physician's assistant ("PA"), and Yvette Hulett, a social worker, were employed by BRNRC in September 2019.  (*Id.*).  PA Jayne was also, dually employed by defendant Amidon Medical Group, under whose "direct supervision" she wrote plaintiff's prescriptions at BRNRC.  (*Id.*).

Plaintiff alleges that PA Jayne and Ms. Hulett "conspired to illegally detain plaintiff" at BRNRC.  (*Id.*).  Specifically, plaintiff alleges that these defendants falsely reported his condition was deteriorating in order to extend his admission to BRNRC from seven to 25 days, ultimately providing a "significant amount of additional revenue for the for-profit facility."  (*Id.*).  Plaintiff states that this resulted in the facility "fraudulently charg[ing]" his insurance company, and extorting $1,265 from plaintiff for the amount of time he was "unlawfully detained thus imprisoned."  (*Id.* at CM/ECF p. 8).  Plaintiff describes several occasions on which he attempted to leave BRNRC, but was physically prevented from doing so.  (*Id.* at CM/ECF pp. 10-13).  He alleges that NP Jayne kept him at BRNRC against his will based on her claim that plaintiff required a "mental evaluation" before discharge, which plaintiff "was not having any of."  (*Id.* at

3

CM/ECF p. 12).

Plaintiff further alleges that during his stay at BRNRC, his narcotic medication, which appears to have been provided to him upon discharge from the hospital, was "stolen by maintenance workers under [Ms.] Hulett's and [PA] Jayne's supervision." (*Id.*). Plaintiff claims that Ms. Hulett and PA Jayne further delayed his discharge from BRNRC because "plaintiff threatened to call the police and file and report" with respect to the missing narcotic medication. (*Id.*).

Plaintiff's complaint next describes a separate incident that occurred in 2001 at BRNRC, at which time plaintiff was also a patient at the facility. (*Id.* at CM/ECF p. 9). Allegedly, plaintiff had similar issues obtaining his medication at that time. (*Id.*). Plaintiff further alleges that, while a patient at BRNRC in 2001, he watched his roommate choke to death in what he describes as a "wrongful death" incident. (*Id.* at CM/ECF pp. 9-10). Plaintiff alleges that these incidents demonstrate a "pattern of lying and coverups" at BRNRC. (*Id.* at CM/ECF p. 10).

On October 1, 2019, plaintiff was informed that transportation had been arranged to take him to a "mental evaluation" scheduled by PA Jayne. (*Id.* at CM/ECF p. 14). Plaintiff confronted PA Jayne as to "why he had been detained against his will[.]" (*Id.*). PA Jayne responded that plaintiff appeared "unstable," and it would not be safe for him to leave the premises until he had undergone a "mental evaluation." (*Id.*). After further discussion, and plaintiff's demand to meet with a supervisor, PA Jayne "told plaintiff that he seemed to be much, much better than she remembered." (*Id.* at CM/ECF p. 15). She then "decided to release him." (*Id.*). PA Jayne also allegedly admitted to plaintiff

that she was in possession of plaintiff's missing medication.  (*Id.* at CM/ECF pp. 14-17).  Plaintiff's medication was returned to him upon his discharge.  (*Id.*).

Plaintiff is seeking damages in the amount of $74,000, along with court and attorney fees.  (*Id.* at CM/ECF p. 5; Dkt. No. 1-1).  Plaintiff also asks this court to order an investigation into the business practices of the named defendants, and "a referral" to the New York State Office of Professional Medical Conduct.  (Compl. at CM/ECF p. 7).

## III.   Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

### A.   Legal Standards

The RICO statute provides a private right of action to any person injured in his or her business or property by reason of a violation of Title 18 United States Code, section 1962. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006) (citing 18 U.S.C. § 1964(c)).  In order to establish a civil RICO claim, the plaintiff must plead the conduct of an enterprise through a pattern of racketeering activity that causes injury to business or property as a result of the RICO violation. *Lundy v. Catholic Health Systems of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)).  "A pattern of racketeering" is defined as "at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citing 18 U.S.C. § 1961(5)).  The definition of "racketeering activity" includes, inter alia, robbery, bribery, extortion, wire fraud, and mail fraud.  *See* 18 U.S.C. § 1961(1).  The

RICO conduct must be both the proximate and but for cause of the plaintiff's injury. *Lerner v. Fleet Bank, N.A.,* 459 F.3d at 283.

RICO provides only for injury to business or property.  The statute does not provide recovery for physical or emotional injuries. *Kesick v. Ulloa*, No. 1:10-CV-1248, 2012 WL 2873364, at *9 (N.D.N.Y. July 12, 2012) (quoting *Williams v. Dow Chemical Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003)); *see also Moore v. Guesno*, 485 F. Supp. 2d 300, 305 (W.D.N.Y. 2007).  In addition, it is well-settled that a civil claim pursuant to RICO "is an unusually potent weapon - the litigation equivalent of a thermonuclear device.  Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Gruber v. Gilbertson*, No. 16-CV-9727, 2019 WL 4458956, at *5 (S.D.N.Y. Sept. 17, 2019) (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)) (internal quotations omitted).

### B.    Application

Liberally construed, plaintiff's complaint alleges that the defendants conspired to illegally detain plaintiff at BRNRC, in a concerted effort to fraudulently charge plaintiff's insurance company and "coerce/extort" out-of-pocket expenses from plaintiff in order to increase revenue to the for-profit facility.  Assuming, without deciding, that plaintiff has sufficiently plead injury to his property, his claims pursuant to RICO nevertheless fail to state a claim.  At the outset, plaintiff's allegations do not sufficiently allege the elements of any of the relevant predicate acts of racketeering. To

6

state a claim for extortion[1] under 18 U.S.C. § 1951, "plaintiff must show that defendants (1) induced plaintiff, with plaintiff's consent, to part with property, (2) through the wrongful use of actual or threatened force, violence or fear (including fear of economic loss), (3) in such a way as to adversely affect interstate commerce." *Battle v. Associates for Women's Medicine, PLLC*, No. 05-CF-8373, 2006 WL 2642137, at *6 (S.D.N.Y. Sep. 15, 2006) (citing *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992)).  Here, plaintiff vaguely asserts that the defendants "aggressively through illegal means pressured, coerced, or attempted to extort payment from plaintiff . . . . [using] duress, shaming, and other intimidating methods."  (Compl. at CM/ECF p. 8).  Plaintiff fails to articulate any specific acts by the defendants constituting the "use of actual or threatened force, violence, or fear," providing instead only conclusory allegations in this regard.

Even assuming, *arguendo*, that plaintiff had adequately plead that the defendants committed extortion for purposes of establishing a predicate act, plaintiff has not plead two or more acts constituting a "pattern of racketeering activity" occurring within ten years of each other.  Plaintiff is challenging an isolated incident which occurred in

---

[1]Plaintiff also alleges that the defendants committed coercion.  As the Supreme Court has explained, extortion is distinct from coercion: "[w]hereas [extortion] require[s] . . . the criminal acquisition of . . . property, [coercion] require[s] merely the use of threats to compel another person to do or to abstain from doing an act which such other such person has a legal right to do or to abstain from doing." *Sekhar v. United States*, 570 U.S. _____, _____, 133 S.Ct. 2720, 2723, (2013) (citations and internal quotation marks omitted). To the extent plaintiff alleges that the defendants alleged use or threat of force to prevent him from leaving BRNRC constituted coercion, it has been held that such conduct does not qualify as a predicate act under RICO.  *Mackin v. Auberger*, 59 F. Supp. 3d 528, 550 (W.D.N.Y. 2014) (citing *Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *48 n. 55 (E.D.N.Y. Sept. 7, 2013) ("The Supreme Court has found that coercion without the transfer of property or an attempt to obtain property is not extortion and not a RICO predicate act.")).

September 2019.  While plaintiff "believes" that the alleged extortion by BRNRC constituted a "standard covert practice regularly coordinated" by the defendants, such conclusory allegations are insufficient to recover under RICO.

Last, plaintiff has failed to allege that defendants were participants in a RICO enterprise, the activities of which affected interstate commerce. "All of RICO's subsections require an enterprise 'which is engaged in, or the activities of which affect, interstate or foreign commerce.' " *Aliev v. Borukhov*, No. 15-CV-6113, 2016 WL 3746562, at *12 (E.D.N.Y. July 8, 2016) (citing 18 U.S.C. § 1962(a)-(c)). While "[t]he law in this Circuit does not require RICO plaintiffs to show more than a minimal effect on interstate commerce[,]" *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001), "even a minimal showing, [ ] requires some factual allegations of a nexus with interstate commerce." *Aliev*, 2016 WL 3746562, at *12 (citing *Moore v. Guesno*, 485 F. Supp. 2d 300, 309 (W.D.N.Y. 2007), *aff'd*, 301 Fed. App'x 17 (2d Cir. 2008)).  Here, plaintiff does not make any allegations as to how the alleged conduct impacted interstate commerce, except for his unsupported inference that defendants' actions "raise the possibility that [the alleged conduct] may be widespread involving their out-of-state facilities, a pattern[.]" (Compl. at CM/ECF p. 8).

For each of the reasons cited above, plaintiff's claim pursuant to RICO should be dismissed.

## IV.   **Criminal Statutes**

### A.   **Legal Standards**

Crimes are prosecuted by the government, and not by private parties. *Corrado v.*

*New York Office of Temporary and Disability Assist.*, No. 15-CV-7316, 2016 WL

3181128, at \*5 (E.D.N.Y. June 2, 2016) (citing *Hill v. Didio*, 191 F. App'x 13, 14-15

(2d Cir. 2006)). There is no private right of action to enforce federal criminal statutes,

unless the statute specifically authorizes it. *Id.* (quoting *Vasile v. Dean Witter Reynolds

Inc*., 20 F. Supp. 2d 465, 477 (E.D.N.Y. 1998) (citations omitted), *aff'd*, 205 F.3d 1327

(2d Cir. 2000)). This applies to both state and federal criminal statutes. *See Carvel v.

Ross*, No. 09-Civ. 722, 2011 WL 856283, at \*11-12 (S.D.N.Y. Feb. 6, 2011) (citing

*inter alia Abrahams v. Incorporated Village of Hempstead*, No. 08-CV-2584, 2009 WL

1560164, at \*8 (E.D.N.Y. June 2, 2009).

## B.    Application

Plaintiff alleges that the defendants have violated New York Penal Code Article

460 (enterprise corruption) and 25 C.F.R. §11.404 (false imprisonment).  Both of these

statutes provide for criminal penalties, and there is no language in either which

explicitly authorizes, or implies, a private right of action.  *See, e.g., Wilson v.

Neighborhood Restore Dev*., No. 18-CV-1172, 2019 WL 4393662, at \*7 (E.D.N.Y.

Sept. 13, 2019) (no private right of action under Article 460); *Turner v. City of Eagan,

No. 21-CV-0865, 2021 WL 5771202, at \*2 (D. Minn. Dec. 6, 2021) (no private right of

action for false imprisonment under 25 C.F.R. §11.404).  Thus, no matter plaintiff's

assertions, he may not enforce these criminal statutes against any of the defendants, and

the complaint may be dismissed in this regard.  To the extent plaintiff's complaint

asserts a civil cause of action for false imprisonment pursuant to 42 U.S.C. § 1983, such

a claim is also subject to dismissal, for the reasons explained below.

## V.      Section 1983

### A.      Legal Standards

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); see also *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . .") (internal quotation marks and citation omitted).

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (citing *Sybalski v.*

*Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

### B.    Application

Liberally construed, the complaint raises allegations of false imprisonment, conspiracy, and retaliation pursuant to § 1983. However, plaintiff is suing BRNRC, Amidon Medical Group, and Mohawk Valley Health Services, each of which entity appears to be a privately owned facility or medical group.  Plaintiff has not alleged any facts suggesting that these entities are state actors under any of the aforementioned exceptions, or describing how their actions are otherwise "fairly attributable to the state."

Likewise, BRNRC employees PA Jayne and Ms. Hulett are also private actors. Because plaintiff has failed to plausibly allege that the named defendants acted under color of state law, the complaint fails to state any claims for relief under § 1983.  *See DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 69 (E.D.N.Y. 2019) (acknowledging that, in the context of § 1983, public functions do not include operating nursing homes) (citing *Manhattan Cmty. Access Corp. v. Halleck*, ___U.S. ___, 139 S. Ct. 1921, 1926 (2019)); *White v. St. Joseph's Hosp.*, 369 Fed. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals, nursing home, and cemetery named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."); *Thomas v.*

*Mohawk Valley Health Sys*., No. 6:20-CV-01347 (BKS/ML), 2020 WL 6504634, at *6

(N.D.N.Y. Nov. 5, 2020) (rejecting plaintiff's argument that defendant Mohawk Valley

Health System was a state actor, merely because it was a private institution that

received public funding).  Accordingly, plaintiff's complaint should be dismissed to the

extent it assets any claims pursuant to § 1983.

## VI.   **Opportunity to Amend**

### A.    **Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court

should afford the plaintiff the opportunity to amend at least once; however, leave to

re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer*

*& Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B.    **Application**

With respect to plaintiff's RICO claims, the court finds that the defects contained

in the complaint are substantive; there is no amendment that plaintiff can make to the

complaint that would allow him to sue the named defendants under the RICO statute.

Moreover, the claims based on state and federal criminal statutes may be dismissed

with prejudice as against each named defendant, because these statutes do not provide

for private causes of action.

Furthermore, the court is further recommending dismissal of plaintiff's § 1983

claims for lack of subject matter jurisdiction.  Thus, any dismissal must be without

prejudice.  *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018) ("[D]ismissal for

subject matter jurisdiction must be without prejudice.").  However, this court has

serious doubts about whether plaintiff can amend to assert any form of federal jurisdiction over the situation that plaintiff describes in his complaint.  As there appears no basis for plaintiff to raise his claims in federal court, the court should not allow plaintiff to amend, notwithstanding a dismissal without prejudice.  Because lack of subject matter jurisdiction is a substantive defect, *Deul v. Dalton*, No. 1:11-CV-0637(GTS/RFT), 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012), the court recommends dismissal without leave to amend as to plaintiff's § 1983 claims.

 **WHEREFORE**, based on the findings above, it is

 **ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING**, and it is

 **RECOMMENDED,** that plaintiff's claims predicated on the RICO statute be **DISMISSED WITH PREJUDICE** against all of the named defendants, and it is

 **RECOMMENDED**, that any claims alleged by plaintiff pursuant to criminal statutes New York Penal Code Article 460 (enterprise corruption) and 25 C.F.R. §11.404 (false imprisonment) be **DISMISSED WITH PREJUDICE** against all of the named defendants, and it is

 **RECOMMENDED**, that this action otherwise be **DISMISSED WITHOUT PREJUDICE**, but without the opportunity for amendment, and it is

 **ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on the plaintiff by regular mail.

 Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated:    January 5, 2023



Andrew T. Baxter
U.S. Magistrate Judge